UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN L. BARNEY,

                              Plaintiff,

        v.                                                      **DECISION AND ORDER**
                                                                07-CV-49S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


        1.      Plaintiff Kevin L. Barney challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that he has been disabled since January 15, 2004, by a herniated

lumbar spine disc, thoracic and lumbar strain, and degenerative disc disease.  Plaintiff

contends that because his impairments render him unable to work, he is entitled to

disability benefits under the Act.

        2.      Plaintiff filed an application for disability insurance benefits on July 14, 2004.

After his application was denied, Plaintiff requested a hearing before an ALJ.  The ALJ

conducted a hearing on June 22, 2006, at which Plaintiff appeared with counsel and

testified.  Vocational expert Julie Andrews also testified at the hearing.  The ALJ

considered the case *de novo*, and on July 20, 2006, issued a written decision denying

Plaintiff's application for benefits.  On November 29, 2006, the Appeals Council denied

Plaintiff's request for review.

1

3.      Plaintiff filed this action challenging Defendant's final decision on January 30, 2007.[1]  On October 22, 2007, Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Plaintiff filed a Motion for Judgment on the Pleadings on December 21, 2007.  After full briefing, this Court deemed the motions submitted and reserved decision.  For the following reasons, Defendant's motion is granted and Plaintiff's is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the

---

[1]The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987)

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts:  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.   Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity during the relevant time period (R. at 13);[2] (2) Plaintiff's mild degenerative arthritis/disc disease of the lumbosacral spine, without neural compression, and history of cervical sprain/strain are "severe" impairments within the meaning of the Act (R. at 14); (3) Plaintiff's impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 14); (4) Plaintiff retained the residual functional capacity to perform "no more than a light level physical exertion," with certain limitations[3] (R. at 14); (5) Plaintiff is unable to perform his past relevant work as a factory loader/material handler, store manager, laborer or housekeeper.   (R. at 23); and (6) Plaintiff is a "younger

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ found that "the claimant has had at least the residual functional capacity to perform a range of work activity that: requires no more than a light level of physical exertion; affords the option to sit or stand at will; requires no climbing of ladders, ropes or scaffolds, or more than occasional performance of all other postural movements; entails only tasks that essentially require straight ahead vision and no side-to-side, frequent or repetitive head/neck movements; requires no overhead reaching or lifting; and entails no concentrated exposure to temperature extremes."  (R. at 14.)

individual" who retains a residual functional capacity to perform work available in the national economy (R. at 23-24). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision. (R. at 24-25.)

10.     Plaintiff lodges a number of challenges to the ALJ's decision.   First, he argues that the ALJ erred by improperly substituting his own opinion for that of Plaintiff's treating physicians on the issue of whether he needed pain medication.  He also contends that the ALJ misapplied the treating physician's rule by discounting evidence from Dr. Avellanos, and instead relying on evidence from Dr. Luzi.

Under the "treating physician rule,"[4] an ALJ must give controlling weight to a treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under 20 C.F.R. § 404.1527(d)(1)-(6), an ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

opinion, (3) consistency, (4) specialization of treating physician, and (5) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The treating physician's rule requires that only a physician's *medical* opinions be given controlling or extra weight.  20 C.F.R. § 404.1527(d); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).   The disability determination is reserved to the Commissioner, not a treating physician.  See 20 C.F.R. § 404.1527 (conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act).  Consequently, an ALJ is not required to accept a treating physician's conclusion that a plaintiff is totally disabled.

Here, the ALJ discussed his consideration of Dr. Avellanos's opinion, fully setting forth the inconsistencies and reasons why it was not entitled to controlling weight.  (R. at 16-23.)  Citing supporting evidence in the record, the ALJ explained why he viewed Dr. Avallanos's opinions as inconsistent with Dr. Avallanos's own clinical findings as well as with Plaintiff's reported daily activities.  (R. at 14, 18.)  Moreover, the ALJ was entitled to rely on Dr. Luzi's opinion because it was consistent with the overall medical evidence and supported by the findings of Drs. Brothman and Holland.  (R. at 16-23.)  Accordingly, this Court finds that the ALJ properly applied the treating physician's rule and did not substitute his own judgment for that of the medical care providers.

11.     Plaintiff next argues that the ALJ's credibility determination is not supported by substantial evidence in the record.  He argues that the ALJ was racially biased because he found that Plaintiff, who is African-American, lacked motivation to work and may have

at times exaggerated his symptoms to continue receiving prescription pain medication. Plaintiff's claim of racial bias is based on his conclusion that the ALJ's findings "are disturbingly familiar to the all-too-familiar code words for racism ("lazy", "drug user", etc.)." (Plaintiff's Memorandum of Law, Docket No. 14, p. 22.)

Plaintiff's allegation of racial bias is unfounded and ill advised.  Evidence in the record fully supports the ALJ's concern that Plaintiff's work history reflects a lack of motivation.  In 1982, 1984, 1985, 1991, 1992, and 1993, Plaintiff had no work history whatsoever.  (R. at 16, 50.)  He reported annual income of between only $50 and $237 in 1983, 1986, and 1995,  (R. at 16, 50.); and annual income of between $238 and $3,200 in 1981, 1987, 1988, 1990, 1994, 1996, and 1997, (R. at 16, 50).  Moreover, the ALJ thoroughly explained his concern that Plaintiff exaggerated his symptoms to acquire prescription pain medication, including citation to evidence that Dr. Avellanos advised Plaintiff to discontinue using such medication (R. at 197, 201), that Plaintiff drank alcohol with his medication (R. at 17), and that objective medical findings do not support Plaintiff's subjective complaints of pain (R. at 17).

Consequently, this Court finds that the ALJ's credibility finding is supported by substantial evidence in the record and that Plaintiff's claim of racial bias appears seriously misplaced in light of the record evidence.

12.     Third, Plaintiff argues that the vocational expert's testimony does not support the ALJ's decision.  Based on the vocational expert's testimony that 174,000 positions nationally and 465 positions locally would be available for someone with Plaintiff's residual functional capacity (R. at 282), the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, (R. at 24).  Plaintiff argues that 465 local jobs in the Western New York area does not constitute a significant number of jobs.

But the number of regional jobs is not the defining factor.  The Commissioner satisfies his burden of demonstrating that work exists in the national economy if he demonstrates that "significant numbers either in the region where [the claimant] lives or in several regions of the country" exist.  42 U.S.C. § 423(d)(2)(A).  Moreover, the availability of jobs is determined "regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if he applied for work."  Id.  Accordingly, this Court finds that the existence of 174,000 positions nationally and 465 positions locally, as attested to by the vocational expert, sufficiently supports the ALJ's conclusion that a significant number of jobs exist in the national economy that Plaintiff could perform.  (R. at 24.)

13.     Finally, Plaintiff contends that the ALJ failed to adequately develop the record by not seeking further clarification from his treating sources.  Recontacting medical providers is necessary when the ALJ cannot make a credibility determination based on the evidence of record.  20 C.F.R. § 404.1512(e)(1).  Additional evidence or clarification is sought if there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).  Here, the ALJ did not find any inadequacy or ambiguity in the medical evidence that prevented him from making a disability determination.  Rather, he found that the medical evidence did not support a finding that Plaintiff was disabled under the Act.  Consequently, the ALJ was under no obligation to recontact Plaintiff's treating physicians.

14.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  September 22, 2008
        Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge